**PUGLISI LAW**
SABRINA VORA-PUGLISI
Florida Bar No. 0324360
1900 N. Bayshore Drive, Suite 1A
Miami, Florida 33132
Tel. (305) 403-8063
sabrina@puglisilaw.com

**BASKIN RICHARDS PLC**
ALAN BASKIN
State Bar No. 013155
N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsímile 602-595-7800
alan@baskinrichards.com

*Attorneys for Defendant John Caruso, Jr.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>vs.<br><br>John Michael Caruso,<br><br>        Defendant. | **Case No.  CR-20-00165-JJT**<br><br>**SECOND MOTION TO REOPEN DETENTION HEARING**<br><br>**(Oral Argument Requested)** |

  Pursuant to 18 U.S.C. §3142(f)(2)(B) and §3142(i), the Defendant, John Michael Caruso, by and through counsel, files this Motion to Reopen Detention Hearing, and states the following:

   Newly discovered evidence in this case supports Mr. Caruso's innocence - that he owns an abundant amount of cryptocurrency; he allocated his cryptocurrency to each investor in the amount that they invested with Zima Digital; and he has always had an intention to satisfy each and every investors' contracts. The evidence that cryptocurrency exists, and that he has the ability to satisfy the promises

made to investors, means that Mr. Caruso is not a flight risk and he should be released immediately to make his investors whole. This evidence, in the form of an analysis by defense expert and computer forensic analyst, Kelly "K.J." Kuchta, demonstrates a change in circumstances that warrants reconsideration of bond, or at the very least, temporary release for Mr. Caruso to prepare his defense and be able to show his innocence.

## I.    PROCEDURAL BACKGROUND

On January 29, 2020, John Michael Caruso was arrested by way of Complaint with allegations of fraud. (DE 3). On February 6, 2020, the government filed its Motion for Detention. (DE 14). On February 6, 2020, Caruso filed his Opposition to the Motion for Detention. (DE 23).

On February 7, 2020, Magistrate Judge Burns held a detention hearing. After taking the matter under advisement, Magistrate Judge Burns entered an Order detaining Caruso pending trial. (DE 27). On February 18, 2020, and Indictment was returned against Caruso and co-defendant Salter, charging them with conspiracy, wire fraud and money laundering. (DE 30).

Caruso filed his Emergency Motion to Reopen Detention Hearing on April 1, 2020. (DE 47). The government filed its response on April 6, 2020, and prior to a reply being filed, the Court entered an order denying the defendant's Emergency Motion to Reopen Detention Hearing. (DE 50). On April 22, 2020, Caruso filed his Objection to Order Denying Emergency Motion to Reopen Detention Hearing. (DE 53). The government filed its response to the motion on April 29, 2020. (DE 65). This Court held a hearing on Caruso's objections on April 30, 2020. After hearing arguments from counsel, reviewing the pleadings and taking the matter under advisement, this Court entered an Order Overruling Defendant's Objections to Judge Burns' Order Denying Emergency Motion to Reopen Detention Hearing on May 13, 2020. (DE 71).

An appeal was timely filed in the Ninth Circuit Court of Appeals. On June 15, 2020 the Ninth

Circuit affirmed this Court's ruling. *United States v. Caruso*, 20-10161 (9th Cir. June 15, 2020)(unpublished).

Mr. Caruso has remained incarcerated at the Florence Correctional Center. This motion is being filed, at this time, based upon a change in circumstances and the need for Mr. Caruso to assist in the preparation of his defense.

**II.      ARGUMENT**

**A.  A change of circumstances warrants Mr. Caruso's release.**

18 U.S.C. §3142(f)(2) states that a bail hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The  rule requires the movant to establish: (1) that information now exists that was not known to the movant at the initial detention hearing, and (2) the new information is material to release conditions regarding flight or dangerousness. See *United States v. Knight*, 2020 WL 1676959 at *2 (D. Nev. Apr. 6, 2020); *United States v. Bowens*, 2007 WL 2220501 at *1 (D. Ariz. Jul. 31, 2007)(unpublished).

According to the government, Mr. Caruso received approximately $16,000,000 from individuals for, what they believed, investment in cryptocurrency. (DE 30 at 2). The government claims, after a forensic review of the personal and corporate bank accounts, their evidence shows that the money given from investors was used for personal expenditures; and, that there was no evidence any funds were transferred into any type of digital investment. *Id.*

In August, 2020, defense expert KJ Kuchta, was retained by the defense to conduct an analysis of two cryptocurrency wallet addresses (referenced as CARB1 and CARE1), which were provided by the government in discovery and verified as belonging to John Caruso. Mr. Kuchta prepared a written report explaining what cryptocurrency is, how it works, what analysis he conducted in this case and his findings. Exhibit A. (Filed under seal due to personal identifying information). Mr. Kuchta "spent over 150 hours examining the Government's evidence, including communications between Caruso and his investors and the blockchain, to understand if the allegations in the Government's indictment [were] accurate. After extensive analysis, the evidence shows that Caruso possesses a number of cryptocurrency wallets; Caruso was actively trading cryptocurrency; and there is a substantial total balance of cryptocurrency on the wallets belonging to Caruso." *Id.* at 18. Mr. Kuchta's findings are summarized in this short video. *See*, *https://vimeo.com/486948627*.

The government's concern, after being presented with this new evidence, is that the wallet addresses identified by Mr. Kuchta as belonging to Caruso are not registered in his name. While this is true, Mr. Kuchta, in his supplemental report, explains that a person's name is not needed to open many types of accounts. Exhibit B at 8. (Filed under seal due to personal identifying information). Cryptocurrency is private, by nature, and it is possible to hold cryptocurrency without anyone knowing. The government did not issue a grand jury subpoena to Zima Digital, prior to Complaint, to request proof of digital investments; and subpoenas, sent to only two of the more than 200 exchange-based companies, were not even issued until after the Indictment was filed on February 18, 2020. In fact, when discussing the government's desire to receive a full accounting from Caruso at the April 30th hearing, Mr. Stone acknowledged "it's true that this investigation wasn't fully finished when the defendant and his co-defendant were arrested in late January and that's because the Ponzi scheme was ongoing." (DE 72 at 16). In the government's eyes, the premature arrest of Caruso was a good thing

because it stopped an ongoing Ponzi scheme. Another reasonable explanation, and the accurate one in this case, is that by failing to conduct a more thorough investigation, the government failed to discover that there was never any Ponzi scheme. There was never a need for Caruso to use the investors' money to buy cryptocurrency because he, himself, is a holder of a large amount of cryptocurrency (more than enough to repay his investors).

Kuchta's findings are consistent with Mr. Caruso's claim that he owns substantial cryptocurrency and allocated his cryptocurrency to each investor in the amount that they invested. This would mean that there would be no evidence of a transfer of the funds deposited by investors into any digital currency because Caruso simply allocated his cryptocurrency to each investor for the amount that they were investing. This would also explain why Mr. Caruso used the investors' funds for personal expenditures; because once an investor's cryptocurrency is allocated, the funds are Caruso's to use as he wishes – gambling in Vegas, cars, trips. Mr. Caruso did not intend on defrauding anyone; he always intended on complying with the representations made to his investors, and the evidence now proves that he also has always had the ability to do so.

The government's evidence in this case is primarily based upon a fundamentally erroneous conclusion – that Mr. Caruso possessed no cryptocurrency, and his solicitation of funds from investors was therefore fraudulent. The government, after doing a merely cursory search of two available crypto "wallets" discovered that the wallets were empty with a nearly zero balance. Had they gone further, they would have discovered the truth – there are numerous wallets with a value greater than $100 million dollars in cryptocurrency; these wallets, to a reasonable degree of certainty, belong to Caruso; that active and voluminous cryptocurrency trading activity has occurred and is still occurring on these wallets using a computer software. *Id.* at 22. Mr. Kuchta's determination that Caruso is the owner of these wallets is based upon correlational analysis, which he explains as "a statistical method used to

evaluate the strength of relationship between two quantitative variables. A high correlation means that two or more variables have a strong relationship with each other, while a weak correlation means that the variables are hardly related." Exh. B at 1. Mr. Kuchta feels confident stating that certain wallets he identified belong to Caruso based upon the frequency in which these wallets interacted amongst each other and with CARB1 and CARE1. *Id.* at 3-5. There can be no other reasonable explanation for the movement of money from CARB1 and CARE1 into these other wallets other than that they belong to the same owner. *Id.* Since it is undisputed that CARB1 and CARE1 belong to Caruso, these other wallets, identified by Kuchta, also belong to Caruso. Further evidence to show that Caruso is the owner of wallets CARB2 and CARE2 is the fact that the wallets he uses to pay the fees for CARB1 is the same as CARB2 and same pattern with CARE1 and CARE2. *Id.* at 7. Only one person or entity can own a wallet. Why would Caruso be paying the fees associated with someone else's wallets? To the extent the government has lingering doubts as to whether Mr. Caruso owns these wallets, it is free to provide its own expert to refute this newly discovered (and likely case dispositive) evidence. Moreover, beyond the expert analysis of Mr. Kuchta, John Caruso can easily prove ownership by accessing the wallets – but only if he is released from custody.

The defense expert's findings provide a change of circumstances in this case, evidence that was not available at the time of the original detention hearing or the first motion to reopen detention hearing. In *United States v. Stephens*, the Defendant moved to reopen his detention hearing pursuant to 18 U.S.C. § 3142(f) based upon evidence discovered that undermined the government's case against him.  447 F.Supp.3d 63, 64 (S.D.N.Y. 2020). Although the government had additional evidence to introduce at a hearing, the Court stated that "this new information nonetheless indicates that the Government's case is weaker than it believed to be at the March 6 hearing and bears upon the Court's prior conclusion that the Defendant failed to establish by clear and convincing evidence that he did not pose a danger to the

community." *Id.* at 65. The Court concluded that the changed circumstances warranted a reconsideration of the defendant's bail conditions. *Id.* at 66. Similarly, in this case, the defense expert's report establishes that the government's case is weaker (and substantially opposite) than presented at the previous detention hearings. Mr. Caruso owns substantial cryptocurrency, far exceeding what was given to him for investment by investors, which has also increased greatly in this last year due to the rising values of cryptocurrency (Bitcoin and Ether).

The evidence presented by defense expert Kuchta is material because the government can no longer show, by a preponderance of the evidence, that Caruso is a flight risk, and that, by clear and convincing evidence, he poses a danger to the community. *See* Detention Order (DE 27 at 3). As far as danger to the community, the government advised this Court that the danger was not physical but rather economic on April 30, 2020.

```
        THE COURT:  And is danger here necessarily danger of
physical harm?
        MR. STONE:  No.  There was some back and forth
about -- in the papers about certain felonies of the defendant,
but I think it's safe to say that the Government does not
believe that it is physical harm to the community.  It is much
more so economic harm.
```

(DE 72 at 40). Since Caruso has an abundant amount of cryptocurrency, as confirmed by the defense expert, and did not "defraud" investors of their money, Caruso has no reason to flee and he would not pose an economic danger since he is a very wealthy individual and repayment to the investors would be no issue. This change in circumstances warrants reconsideration by the court as to bail.

**B.  The preparation of Mr. Caruso's defense necessitates temporary release.**

18 U.S.C. § 3142(i) provides that the Court "may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States Marshal or another appropriate person, to the extent [it] determines such release to be necessary for preparation of the person's defense or another compelling reason."

Despite the defendant not having a burden in a criminal case, Mr. Caruso wants the opportunity to prove his innocence, and immediately make his investors whole. The Court may be asking itself, if Mr. Caruso has so much cryptocurrency, then why hasn't he provided this proof to the government? The answer is simple: the only way to access cryptocurrency is through a computer with internet and his phone which sends a code each time the account is accessed. Various accounts of Mr. Caruso's also require facial scan. The use of these multi-authentication features is common in cryptocurrency. The jail does not permit the use of these devices, nor does it allow counsel to bring into the facility these items.

After disclosure of the expert report and a defense presentation to the government at the end of December, the government suggested that Mr. Caruso meet with them to demonstrate his control over the accounts. To accomplish this, Mr. Caruso would need to be transported to the Courthouse to be given access to a computer with internet and his phone. Mr. Caruso agreed to do so. However, this proves to be impossible, as there continues to be constant extensions of time to the jail's quarantine. Since May 3, 2020, when the quarantine first went into effect, there has been approximately twelve non-consecutive weeks that the facility has not been under quarantine. Once again, with the rise of COVID-19 infections, the jail is, again, currently under quarantine. The January 8 deadline was recently extended to January 20, and is expected to be extended again with the new positive results of inmates. While John is willing and ready to prove his innocence, he is unable to unless he is granted release. The

extensions continue because COVID is rampant in the jail and there is no end in sight. Also, the inmates are being told that there are no plans, at this time, to give them any vaccination. Further, due to Caruso's inactivity accessing the accounts for almost one year, there is a strong likelihood that the passwords will need to be reset. This could take up to 2 weeks to complete, which would require more than one transport to the courthouse.

The continued detention of Mr. Caruso does not just inflict harm upon Mr. Caruso, but harms the investors as well. Cryptocurrency is at an all-time high at this moment. Yet, it is still volatile as experts opine and there is no guarantee that it will continue to rise or maintain stability. Caruso, at this time, has the ability to liquidate and pay each investor what they contracted for. There are numerous investors that are in support of Mr. Caruso's release, even if temporary, to give him the opportunity to provide the government with the proof that he has access to cryptocurrency funds.

In *United States v. Buswell*, the Court held that when proceeding under §3142(i), the defendant does not bear the burden to show a change of circumstances as would be required under §3142(f) to reopen the detention hearing. 2013 WL 210899 at *12 (W.D.La. Jan. 18, 2013). However, the defendant does bear the burden to show that his release is "necessary for preparation of the person's defense". *Id.*; *United States v. Dupree,* 833 F.Supp.2d 241, 246 (E.D.N.Y. 2011) citing *United States v. Jeffries,* 2011 WL 182867 at *4 (E.D. Tenn. Jan. 20, 2011) and *United States v. Birbragher,* 2008 WL 2246913 at *1-2 (N.D. Iowa May 28, 2008).

This Court, in its Order on May 13, 2020, after acknowledging the halt to attorney visits at the Florence Correctional Center starting May 3, 2020, stated:

> this presents a closer question than did the potential risk posed by the virus specifically to Defendant's life and health. But the Court concludes those temporary difficulties do not rise to a level necessitating release to facilitate preparation of defendant's defense…CoreCivic will relax restrictions on attorney client visitation as it clears cohorts for absence of infection, on a unit-by-unit basis. If that does not happen, or if all

9

1

2

3

> visitation between counsel and client is prohibited, for an extended period of time such that Defendant's ability to prepare is substantially impacted, the Court can remedy by extending time or revisiting Section 3142(i).

4

(DE 71 at 6).

5

6    Now is the appropriate time to revisit Section 3142(i). While it remains true that Mr. Caruso

7    has not had significant time to meet with his counsel (only 3 times since May 3), this request for release

8    is not made because it is difficult to review thousands of pages of documents with Caruso in person.

9    This request for release, even if temporary, is so that Mr. Caruso can prove his innocence. The

10   government alleges, and has charged, that there is no evidence Mr. Caruso has any cryptocurrency.

11   Caruso's defense is the proof that he does, in fact, have substantial amounts of cryptocurrency and that

12   he allocated his cryptocurrency to each investor. This type of proof can only be provided if Caruso can

13   access his accounts, which can only be accomplished if he has access to a telephone and computer with

14   internet. A third person cannot access these accounts on behalf of Caruso. Security in the digital world

15   is of prime importance. As Mr. Kuchta explains, the fact that it is extremely difficult to access these

16   funds is by design – security is paramount to protect investor's money. Exhibit A at 8-9.

17

18   Caruso's ability to access his accounts and show that he allocated cryptocurrency for each

19   investor is a complete defense to the charges. The only reason that counsel waited this long to file this

20   motion to reopen detention hearing is because we were waiting for the expert's findings to substantiate

21   what Caruso has maintained. COVID-19 and the ability to review the hundreds of pages of documents

22   from the expert with Caruso, when not quarantined, delayed the process. Mr. Kuchta's findings and

23   report were not something that was available at the initial detention hearing or at the request to reopen

24   the hearing. Further, it has not been easy to prepare this case because Mr. Caruso does not have access

25   to his assets. The government's fear, as relayed during the hearing on April 30, is that Mr. Caruso has

26

27

28

10

assets out there that are unknown to the government. (DE 72 at 17). They question where is the money for attorneys and expenses? *Id.* Counsel can advise this Court that there is no money for attorneys and expenses. Counsel has not been paid in this case, as of this date, nor has the defense expert. Despite the fact that the defense expert and counsels have put in hundreds of hours into Mr. Caruso's case, we have not been paid. This fact should show the Court that both counsel and the defense expert believe in Mr. Caruso's innocence.

The defense has been working with the government to transport Caruso to the courthouse, yet there is no set time when that will occur due to the continued extensions of quarantine. Also, as Kuchta explains, it is not necessarily as simple as transferring Caruso to the Courthouse. Other factors play a role into making sure everything falls into place. We have also, recently, provided the government with account names that could help substantiate Caruso's ownership and control over accounts.

Despite trying to work with the government to resolve matters, as the quarantine keeps getting extended, not only is Caruso unable to prepare his defense, but there is a risk that he could die due to COVID-19. Although it is a very small risk and perhaps not probable, if something were to happen to him, none of the investors would ever receive the return of their investment as Caruso is the only one that can access his cryptocurrency. This is not about convenience in preparing for the defense, but rather <u>necessity</u>. The evidence strongly points to the conclusion that Mr. Caruso is innocent; the ***only*** way for him to prove his innocence is if he is released.

If temporary release is granted, Mr. Caruso requests a minimum of thirty (30) days in order to access his accounts. Additional conditions would be that he live with his mother, Susan Caruso (an "appropriate person"), and home confinement with GPS monitoring. If the Court is inclined to allow Mr. Caruso additional time to continue the preparation of his defense, an additional condition could be

a substantial monetary bond with the Court in thirty (30) days, after he has had the opportunity to access his cryptocurrency accounts and liquidate funds.

Counsel has consulted with government attorneys Andrew Stone and James Knapp, who have advised that they object to the reopening of a detention hearing. Counsel consulted with co-defendant's, Zachary Salter's attorney, David Eisenberg, who has no objection.

**III.     CONCLUSION**

Mr. Caruso asks that the Court set this matter for hearing, reopen the detention hearing based upon a change of circumstances, or in the alternative that temporary release be granted for him to properly prepare his defense.

RESPECTFULLY SUBMITTED this 11th day of January, 2021.

Respectfully submitted,

/s/ Sabrina Puglisi
Sabrina Puglisi

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2021, undersigned filed this motion using the CM/ECF system, which will send notice of filing to counsel or record.

    /s/ Sabrina Puglisi
Sabrina Vora-Puglisi, Esq.