**PUGLISI LAW**
SABRINA VORA-PUGLISI
Florida Bar No. 0324360
1900 N. Bayshore Drive, Suite 1A
Miami, Florida 33132
Tel. (305) 403-8063
sabrina@puglisilaw.com

**LAW OFFICES OF DOUG PASSON, PC**
DOUG PASSON
State Bar No. 017423
P.O. Box 4425
Scottsdale, Arizona 85258
Telephone No. 480-448-0086
doug@dougpassonlaw.com
*Attorneys for Defendant John Caruso, Jr.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>John Michael Caruso,<br><br>  Defendant. | Case No. CR-20-00165-JJT<br><br>**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO DEFENDANT'S SECOND MOTION TO REOPEN DETENTION HEARING**<br><br>**(Oral Argument Requested)** |

The Defendant, John Michael Caruso, files this Reply to the United States' Response to Defendant's Second Motion to Reopen Detention Hearing [DE 137] and replies as follows:

1

## I. STANDARD OF REVIEW

The government asserts that the standard of review this Court should employ is only *de novo* if the detention hearing is reopened. DE 137 at 2. They further state that *United States v. Koenig* "involved an appeal to the district court after the *original* order of detention issued by the magistrate judge." *Id.* The procedural facts in *Koenig* are the same as the instant case - "United States Magistrate Judge Brazil ordered Koenig detained pending trial, on the ground that he was a flight risk. Koenig <u>subsequently</u> filed a motion for pretrial release, which Magistrate Lanford denied, finding that Koenig was <u>still</u> a flight risk. Koenig then sought review of the magistrates' orders before the district court." 912 F.2d 1190, 1191 (9th Cir. 1990) (emphasis added).[1] The facts in *Koenig* suggest that Koenig filed a second motion for bond and proceeded before a second Magistrate Judge. *Id.* The Ninth Circuit held that *de novo* review was the proper standard to be applied. *Id.* at 1193.

Similarly, in *United States v. Jonathan Troncoza*, the Honorable Judge Snow reviewed an Order from Magistrate Burns Denying Defendant's Motion to Reconsider Detention Order and to Reopen Detention Hearing, filed almost three months after the original detention hearing. CR-10-1126-1 PHX-GMS (Dist. Ariz. 2010), DE 161. The Court applied a *de novo* standard of review, citing to *Koenig*. *Id.*

Even if this Court finds that *de novo* review is not the appropriate standard, Magistrate Burns clearly erred in finding that the evidence presented was not new and material; and that temporary release is not necessary for Mr. Caruso to prepare his defense.

---

[1] Due to the age of the case, the docket for *U.S. v. Koenig* does not include the applicable release motions to determine the exact dates.

**II.     Magistrate Judge Burns clearly erred in finding that the evidence presented was not new and material.**

The government continues to focus on, and argue that, "Defendant's claim that he's a billionaire isn't new evidence." DE 137 at 3.  While it is true that the defense understanding that Mr. Caruso owns cryptocurrency is not new, it is, in fact new *evidence*.  Any assertion made by counsel concerning Mr. Caruso's cryptcurrency holdings at the time of the original detention hearing was not *evidence.*  It's an unverified statement that could never have been offered as "evidence" of any credible kind at the outset of the prosecution.  Mr. Kuchta's findings did not exist until December, 2020, *approximately eleven months* after Mr. Caruso's initial detention hearing.

Magistrate Burns further erred in finding that if Mr. Caruso does have such assets then he is a flight risk. The government points to Magistrate Burns' finding that Caruso's "purported wealth isn't material, in part because, if his claims are true, Defendant controls vast wealth that can be accessed anywhere in the world and isn't regulated." DE 137 at 4. **It is completely inapposite for the United States to argue that Mr. Caruso is guilty because he does not possess cryptocurrency, but in the same breath argue that if he does, then he is a flight risk**. See *Id.* The government and Magistrate Burns fail to acknowledge that if Mr. Caruso does, in fact, have such assets, then he is innocent.  What innocent person is a flight risk? And, what could be more "material" than evidence of innocence?  The prosecution and Magistrate Burns further fail to acknowledge that the amount owed to investors is but a small amount of money in comparison to the wealth that Mr. Caruso claims he owns. He has absolutely no reason to flee, but instead to prove his ownership of cryptocurrency and satisfy his investors' contracts.

Further evidence supporting Mr. Caruso's release is that he has no history of failure to comply with a previous Court's release conditions; and, there is no evidence that he has unknown amounts of cash that would enable him to flee the country. Nonetheless, this Court is able to fashion conditions sufficient to ensure Mr. Caruso remains within its jurisdiction.

### III.     Magistrate Judge Burns failed to properly consider temporary release.

The majority of the hearing held before Magistrate Burns discussed the reopening of detention under 18 U.S.C. §3142(f)(2). Not once during the hearing held before Judge Burns did the government address temporary release. Even after counsel advised the Court, "And, you know, they still have not addressed why temporary release is not appropriate. They did not mention it at all" (DE 123 at 32), the Court still did not ask the government to respond or explain how Mr. Caruso could prepare his defense while incarcerated. In her ruling, the Court stated, "I don't find that, from what I've heard, that [Caruso's defense'] been hampered in any way thus far." The evidence clearly shows that the defense has been severely hampered. Mr. Caruso still sits in custody, over one year later, unable to access his cryptocurrency accounts because **internet access is required**. The defense had to retain an expert to conduct an analysis that, due to constraints of COVID, took eleven months. Despite his findings, the government continues to find fault. On the other hand, Mr. Caruso could prove his innocence in a matter of days, if released – however, he must have internet access to make it happen.

18 U.S.C. §3142(i) is clear in that there are two reasons under which a defendant can seek temporary release. In the instant case, the defense must show that Mr. Caruso's release is necessary to prepare his defense. *Id.* The government continues to misstate the requirements for temporary release by combining the elements under §3142(i), citing to *United States v.*

4

*Dupree*, that the Defendant "had the burden to show temporary release… is *necessary* for a 'compelling reason'". DE 137 at 5. The *Dupree* Court does not state what the government claims it does through their citation. Rather, the government truncates and combines the Court's words. What the Court actually says is that Dupree "has not made an adequate showing that his release is 'necessary' for the preparation of his defense. Nor does Dupree mention any other 'compelling reason'." 833 F.Supp.2d 241, 247 (E.D.N.Y. 2011). The facts and findings by the Court in Dupree are worth noting, however. Dupree was a white-collar bank fraud case where the defendant was released on an $800,000 bond. *Id.* at 244. He was charged in another bank fraud thereby violating his bond which was, subsequently, revoked. *Id.* Dupree requested temporary release for the two weeks prior to trial so that he could participate in the review of thousands of pages of discovery, participate in witness interviews and meetings with counsel. *Id.* at 246. He argued that his detention impaired his right to prepare due to the limitations of the jail. *Id.* The Court denied Dupree's motion, but found a way to allow him the ability to prepare his defense. They gave him greater access to the attorney room, longer hours with his attorney, ability to research and, most importantly, access to a computer that could read DVD's. *Id.* Dupree would be similar to the instant case if this Court could either order or convince Core Civic to allow Mr. Caruso access to a computer with internet. Counsel's request to Core Civic were met with negative results.

    While the Court was able to accommodate Dupree's ability to prepare his defense, while he remained in custody, without losing any benefits or creating a harsher punishment, the same cannot be said in the instant case. The government cites to Magistrate Burns' ruling that "Judge Tuchi has the tools, as other judges here have, to ensure that defense counsel have adequate

access to their clients." DE 137 at 4, citing to DE 123 at 36. Additionally, the failure to provide Mr. Caruso with internet impedes counsels' access to their client. We, the lawyers, require access to our client's information. Whether that information exists in his head, or in the virtual space on the internet is of no moment. The fact is, the access we need to our client involves his ability to be physically available to us when he can access the internet. We are denied that access in total, and therefore denied the ability to present a defense, which as we continue to unequivocally state is <u>actual innocence</u>. Magistrate Burns failed to question how Mr. Caruso could access the internet; and what granting that access would entail. As stated in the defense' objection, CoreCivic confirmed that Mr. Caruso would have to waive privileges earned and be placed in solitary confinement before and after any transport to the courthouse, assuming that such transport could take place during the current state of affairs (COVID).

**IV.    The government's skepticism does not negate Caruso's Constitutional right to prepare his defense.**

The government sets forth four reasons why Mr. Caruso's arguments are not credible. First, the government recently filed a rebuttal witness who will testify in opposition to the defense' expert. DE 137 at 5. While the government summarizes Agent Ellsworth's potential testimony, they have not provided any written report or substance of any kind concerning the basis for his opinion. It is not uncommon for a defense expert and government expert to disagree.  This is usually how cases involving experts proceed. Just because the government has provided an expert with an alternative position, does not mean that the defense' expert is incorrect. It will be up to a jury to determine, after hearing from both witnesses, under which

analysis they find most credible.  **At this moment, however, there is only *one* documented expert opinion before the court – Defense Expert K.J. Kuchta**.

Second, the government states that they anticipate financial summary witness Scott Holt to testify to his tracing of the investor cryptocurrency and how Mr. Caruso disposed of those assets. *Id.* at 6. Again, the government provides no report documenting Mr. Holt's analysis, despite him having provided a written report of his forensic review of bank accounts conducted approximately one year ago.

Third, the government addresses Mr. Caruso's argument that two account names for Bitmex were provided to them without their follow-up. The government states that they did, in fact, respond to counsel but never heard back. Counsel never saw the government's communication responding to her email and assumed that there was no response. The government has since provided the contact information for Bitmex' counsel so that the defense can communicate directly with him.

Fourth, the government responds to defense' argument regarding no special computer or server being necessary. Perhaps there is a miscommunication. The defense' point is that trading software is downloadable. No special computer or server is needed because it runs on the Exchange platforms.

Clearly the government is skeptical of Mr. Caruso's claim that he owns substantial cryptocurrency assets. Magistrate Burns, likewise, showed her skepticism. DE 123 at 36. Even if this Court is skeptical of Mr. Kuchta's analysis and findings, Mr. Caruso still has the right to prepare his defense.  Mr. Caruso's defense is that he owns substantial cryptocurrency assets.

The defense has tried working with the government. We provided an expert report to them, which they were not satisfied with.

The government now responds by suggesting temporary release is not necessary because Mr. Caruso's cryptocurrency ownership "can be proven in other ways short of Defendant's release, e.g. providing information about his wallets so the government can verify his possession or control." DE 137 at 5. The government's suggestion is contrary to the Sixth Amendment granting an accused the right to make his own defense. *See Milton v. Morris*, 767 F.2d 1443 (9th Cir. 1985). Mr. Caruso does not, and should not, have to prepare his defense with the government looking over his shoulders; or permit the government to decide what is sufficient and insufficient as evidence. Nor should the government be given unfettered access to a fortune in bitcoin when those assets are not fruits or instrumentalities of any offense – indeed they are the evidence of his innocence. Cryptocurrency, is *private*. Mr. Caruso has rightly exercised intensive security protocols to protect his assets and the assets of his investors. He should not be compelled to divulge this, or any other personal information, to the government. What does seem clear is that nothing short of Mr. Caruso personally accessing his accounts will convince the government that Mr. Caruso is innocent.

This Court must determine how Mr. Caruso's Constitutional right to prepare his defense can be satisfied if temporary release is not granted. The only possible alternative to Mr. Caruso's accessing his accounts while in custody is transport to the Courthouse. He would need at least two or more trips due to the length of time since the accounts have been accessed and the fact that he no longer has access to the phone number that would be used to send a security code from the exchanges. It is still unknown whether this Court could arrange for Mr. Caruso

to be transported to Court to access his accounts on the internet. But what is known, is that in doing so, Mr. Caruso would be required to go into solitary confinement, according to Core Civic. Such increased punishment, without a justified reason, violates the Fifth Amendment.

The United States Supreme Court has stated that if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Conversely, if a restriction or condition is not reasonably related to a legitimate goal— if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. *Id.* at 539.

Forcing Mr. Caruso to choose between proving his innocence and waiving his privileges (regular showers, commissary, calls, confinement to cell his 24/7) for an extended period of time is cruel.  Especially since this Court can order his release for thirty days, place restrictions such as home confinement and electronic monitoring.

A factor that this Court should also take into consideration is the desires of the investors. *See* Crime Control Act (1990).  There were no investor complaints in this case. In fact, it is the government that contacted investors and advised them that they are "victims". Here is an opportunity for these individuals to be made whole faster. This Court should also take into consideration the feelings of investors. Numerous investors, in this case, are asking this Court to release Mr. Caruso temporarily. Exhibit A. The attached investors account for a large portion of the total investment taken in. Another factor to consider is that the trial will now be continued, most likely, to January, 2022. This will mean that Mr. Caruso will spend two years

in custody prior to trial and the investors will continue to have no answers. Mr. Caruso, and his attorneys, must have the ability to prepare a defense.

## V. CONCLUSION

Magistrate Judge Burns erred in denying the re-open of detention, or alternatively temporary release.

RESPECTFULLY SUBMITTED this 12th day of March, 2021.

Respectfully submitted,

/s/ Sabrina Puglisi
Sabrina Puglisi

/s/ Doug Passon
Doug Passon

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, undersigned filed this motion using the CM/ECF system, which will send notice of filing to counsel or record.

   /s/ Sabrina Puglisi
Sabrina Vora-Puglisi, Esq.