NOT FOR PUBLICATION

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 20-CR-00165-PHX-JJT |
| Plaintiff, | |
| v. | **ORDER** |
| John Michael Caruso, et al., | |
| Defendants. | |

At issue is Defendant's Objection to Order Denying Defendant's Second Motion to Reopen Detention Hearing (Doc. 133, "Obj."), to which the government filed a Response (Doc. 137) and Defendant filed a Reply (Doc. 138), a sealed Exhibit to that Reply (Doc. 142) and a Supplement (Doc. 145). The Court read and internalized the above documents, as well as the Second Motion to Reopen Detention Hearing (Doc. 110), the government's Response thereto (Doc. 116), the transcript of the hearing before United States Magistrate Judge Burns on the Second Motion to Reopen (Doc. 123), Defendant's expert report filed under seal in support of the Second Motion to Reopen (Doc. 122) and the government's Notice of Rebuttal Expert Disclosure (Doc. 135). The Court concludes additional oral argument would not assist it in its decisions. LRCrim 12.1; LRCiv 7.2(f). The Court will overrule in part and sustain in part Defendant's Objections.

Defendant has been in custody in this matter since early 2020. Trial is now set for February 1, 2022. Defendant previously objected to an Order by Judge Burns denying his first motion to reopen detention proceedings, and when this Court overruled that objection,

filed an unsuccessful interlocutory appeal to the Ninth Circuit. In the present Objection, Defendant urges two bases for reopening detention proceedings: 1) he is entitled to reopening and release in light of new information not known to him at the time of his February 2020 detention hearing, which information materially bears on his flight risk status; and 2) in the alternative, the Court must release him temporarily to prepare his defense. The Court concludes there is no merit to Defendant's first argument, and finds some merit in the second.

I.  **New Information**

18 U.S.C. § 3142(f) provides in relevant part that a judge may reopen a detention hearing upon a finding that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance" of a defendant for future proceedings. 18 U.S.C. §3142(f) (2003).  In his Second Motion to Reopen before Judge Burns, Defendant offered an expert report opining that Defendant possesses, and has possessed throughout the duration of his detention, cryptocurrency trading accounts and repositories, known in the parlance of cryptocurrency holders as "hot wallets" and "cold storage," that contained at the time of his arrest hundreds of millions of dollars' worth of cryptocurrency that is more than ample to cover the approximately 20 million dollars in investments the government asserts victims made with Defendant as a result of the wire fraud scheme alleged.  Counsel asserts that due to an over-five-fold rise in the market value of some cryptocurrencies held, such as Bitcoin, during Defendant's detention, Defendant now holds assets worth over a billion dollars in his wallets and in cold storage.

Defendant argues the report constitutes "new information" unknown to him at the time of the detention hearing, and further urges it has material bearing on the question of flight risk. This is not new information. If, in fact, Defendant has such substantial cryptocurrency assets in his possession and control, he certainly knew it at the time of his detention hearing, yet he did not raise it to the Court.[1]

---

[1] At the hearing on Defendant's Second Motion to Reopen, Judge Burns found it

- 2 -

Present counsel, who were not Defendant's counsel at the time of the detention hearing, argue their predecessors could not raise defendant's cryptocurrency holdings to the Court at the time of his detention hearing because, while defendant advised his then-counsel of his holdings, counsel could not "support his claim" until they received the expert's report opining that Defendant had such holdings. (Obj. at 4, 9.) This misses the mark for at least three reasons. First, Section 3142(f)'s provision allowing a reopening of detention proceedings is triggered on qualifying information "not known to the *movant* at the time of the hearing," not his attorneys. (italics supplied.) The statutory provision is specific and clear, as is its purpose, which is to preclude a defendant from taking multiple bites at the apple when the facts are known to him as of the first bite. Whatever counsel at the time of the detention hearing "knew," Defendant certainly knew of his holdings, as under all accounts, he has consistently asserted to his attorneys from the inception of this matter that he had hundreds of millions (to billions) in his cryptocurrency accounts.

---

problematic that Defendant not only did not raise the issue of substantial possible assets under his control at the detention hearing, but pursued an argument for release that was precisely the opposite—that Defendant was not a flight risk because the government had seized all of his assets:

> The Court: But I thought there were affirmative statements made [in the detention hearing], and I don't recall if it was by Mr. Caruso or his lawyer, that he did not have assets which he could access to flee, and that went to the issue—to one of the bigger issues the Court was grappling with, which was risk of flight . . . . I specifically remembered at the original detention hearing expressing some concern about a third party not being a family member offering all of the equity in his own personal home to secure a bond. And it seems to me that that would have been the exact time to say that 'I have other assets' or at least offer to continue the matter such that it could be explored . . . . [a]nd there was an assurance that the government had seized all of his assets, and so he would not for that reason have the ability to flee. Well, now we have just the opposite, which is, to me, further supports the finding of a flight risk[.]

(Doc. 123, Tr. 02/11/21 at 7:1317; 35:2-15.) Even on a *de novo* review, the Court would share Judge Burns's concerns about the credibility of the assertions. Because it determines that there is no "new information" within the meaning of Section 3142(f), however, the Court does not reach the material bearing issue.

- 3 -

Second, there is no prohibition, ethical or otherwise, against counsel reporting to the Court at a detention hearing that a client claims or may have substantial assets counsel has not yet verified. Defense counsel frequently advise magistrate judges that there may be assets available to post bond, or suitable third-party custodians available to facilitate release, where that information is not yet definitive and will require additional investigation and follow-up. Judge Burns acknowledged as much at the hearing, as set forth in footnote 1 *supra*. When that happens, the judge allows additional time to explore and flesh out such assertions, as Judge Burns noted. But that did not happen here, though it easily could have. Present counsel may well believe they would have done things differently. That is of no import—counsel lives with the rational tactical decisions of predecessor counsel.

Third, counsel's argument that "[a] lawyer couldn't make said proffer at that point because the evidence, i.e., proof of Mr. Caruso's crypto holdings and how to find them, had not been made known" (Obj. at 9), misreads the statute in yet another way. Counsel conflates new "information," which is what Section 3142(f) requires to reopen, with new "evidence," which the statute does not even mention. This is not to say that new evidence cannot itself be new information. But where, as here, the new evidence merely reiterates information a defendant already knows or asserts to be true, Defendant's argument is simply wrong. Everything the expert opines on in this matter is based on information already known to, and provided to him by, Defendant. It does not add new information to the equation. The expert report here is new evidence perhaps probative of previously known information; it is not itself new information. The Court will overrule Defendant's Objection on the basis that Judge Burns misapplied Section 3142(f).

II. **Temporary Release**

Section 3142(i) provides in relevant part that the Court may

> by subsequent order, permit the temporary release of the person, in the custody of a United States Marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense.

18 U.S.C. §3142(i) (2003). As Judge Burns alluded in her ruling might happen, the Court concludes it must exercise the tools available to it, as temporary release is necessary for Defendant to prepare his defense. The Court bases its conclusion on the persistence of the pandemic, and the concomitant continuation of detention facility policies and procedures intended to minimize risk of the spread of COVID that inadvertently have hampered Defendant's ability to consult face-to-face with his counsel, review paper documents or access electronic files, coupled with the unique nature of the allegations and defenses in this matter which implicate the defense's apparent need for access to web-based accounts.

In its previous Order overruling Defendant's First Objection based on COVID concerns, the Court stated at the time that it

> concludes those temporary difficulties do not rise to a level necessitating release to facilitate preparation of Defendant's defense. Defendant's trial is currently set for September, nearly five months in the future. CoreCivic will relax restrictions on attorney client visitation as it clears cohorts for absence of infection, on a unit-by unit basis. If that does not happen, or if all visitation between counsel and client is prohibited, for an extended period of time such that Defendant's ability to prepare is substantially impacted, the Court can remedy by extending time or revisiting Section 3142(i).

(Doc. 71 at 6.) That anticipated relaxation of restrictions has not yet occurred despite the passage of nearly a year. Defendant's ability to consult with counsel and attend to other defense preparation tasks requiring face-to-face consultation and web access—the last a generally rare requirement for defendants but one the Court finds exists on a limited basis in this matter due to the nature of the scheme charged—has been curtailed since the Court issued its Order. And while trial in this matter is still nine months away and adequate time to prepare remains, the risk factors for COVID spread have not yet sufficiently abated to relax the above limitations at CoreCivic/CAFCC.

It is thus appropriate to revisit Section 3142(i), and upon that revisitation, the Court concludes that temporary release will allow Defendant to prepare his defense, part and

parcel of which is to address his investors' concerns, as his counsel represents Defendant intends to do.[2]

The Court will order Defendant's temporary release to the custody of the United States Marshal, on a daily basis, for five consecutive court days—Monday, June 7, through Friday, June 11, 2021. On those days, Defendant shall be transported from CoreCivic/CAFCC to the Sandra Day O'Connor United States Courthouse, where he shall remain in the custody of the Marshal Service, be provided a room to meet with his counsel in confidence, and be provided access to a laptop with internet connectivity while in that room. At least one of his counsel, as officers of the Court, shall be present with Defendant at all times when he has access to the laptop. Counsel shall make arrangements for a laptop with internet connectivity—which must be a Verizon Wireless Mi-Fi device, as that is the only cell service provider with connectivity to Marshal space in the Courthouse—and any necessary plug-ins, such as biometric readers, for Defendant to access his cryptocurrency accounts and storage only.

Defendant's counsel shall share with the government's counsel the precise identity of equipment they intend to provide Defendant at least one week in advance of June 7, to allow the government to raise any issues to the Court before commencement of the daily releases, if necessary. Defendant shall retain no hardware (to include storage) or software upon completion of each daily meeting with counsel at the courthouse and return to CAFCC. Defendant shall have no contact with any fact witnesses in this matter during the temporary releases.

The Court has confirmed with the Marshal Service that Defendant need not be placed in any segregation status prior to transport to the Courthouse, where the purpose of the transport is for other than a public hearing. Therefore, Defendant shall not be isolated for the two-week period preceding his series of temporary daily releases, although he will

---

[2] In making its determination, the Court also has considered the declarations of alleged victims provided by Defendant (Doc. 142)(sealed), which it considers according to provisions of the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(4) ("A victim has . . . [t]he right to be reasonably heard at any public proceeding in the district court involving release[.]").

be segregated upon return to CAFCC each evening during the pendency of his daily releases. USMS also confirms that upon conclusion of the fifth temporary daily release, Defendant will not be isolated upon his return, but rather will be included in the cohort of most recent detainee arrivals. The above provisions minimize or eliminate any hardship associated with temporary release under CoreCivic/CAFCC's COVID risk control regime.

**IT IS ORDERED** overruling in part and sustaining in part Defendant's Objections (Doc. 133) to Judge Burns's Order denying Defendant's Second Motion to Reopen Detention.

**IT IS FURTHER ORDERED** granting Defendant temporary release, during the business day, to the United States Marshal Service, each day from June 7 to June 11, 2021, as set forth in detail above. This Order shall constitute a transportation Order for each of the dates of June 7 through June 11, 2021.

Dated this 6th day of May, 2021.

Honorable John J. Tuchi
United States District Judge