NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

John Michael Caruso, *et a*l.,

Defendants.

No. CR-20-00165-PHX-JJT

**ORDER**

At issue is Defendant's *Ex Parte* Motion to Compel CADC[1] to Grant Access to Appropriate Prescription Medical Device—Contact Lenses (Doc. 150, Mot.), to which the government had filed a Response (Doc. 155, Resp.) and Defendant has filed a Reply (Doc. 166) and an Amended Reply (Doc. 168, Reply) per the Court's Order (Doc. 167). The Court also has considered all sealed medical records submitted by the parties.

Defendant asserts that he requires contact lenses because glasses "do not correct his vision in the way that his prescription contact lenses do" and they "subject [him] to excruciating migraine headaches, for which he regularly complains to CADC medical." (Mot. at 2.) He states his issues "are well-documented by [his] treating ophthalmologist, who does not dispute the claim that [he] is 'completely incapacitated and hindered' with his current glasses." (Mot at 2.) Asserting there is "no contrary medical opinion or any other legitimate reason" that would support CADC's denial of contact lenses, Defendant

[1] Where not quoting Defendant's moving papers, the Court will refer to the entity against which Defendant seeks the Order as CAFCC—the acronym for the CoreCivic facility at issue, Central Arizona Florence Correctional Complex.

urges the Court should order CAFCC to provide him the contact lenses to assist in his review of the over 5,000 pages of discovery in preparation of his defense the instant white collar case. (Mot. at 2.)

The government responds that "contact lenses pose a safety and security issue in CAFCC and are therefore prohibited unless medically necessary." (Resp. at 1.) In his attached Declaration CAFCC Assistant Warden McTighe states that: 1) the hard plastic lens case and the unverifiable solution therein present security risks to the facility; 2) their general unavailability to general population makes the supplies subject to black market activity, strongarm behavior and the potential for other related violence: and perhaps most significantly, 3) the OC/pepper spray deployed at times by corrections officers in CAFCC "to diffuse situations and gain detainee compliance" in confrontational situations can, upon reaching the eyes, fuse the contact lenses to a detainee's eyeballs. (Doc. 155-1, McTighe Decl., at 3-5.) As a result, while contact lenses are not blanket-barred, they are only permitted for a "very few detainees who are prescribed contacts as a matter of medical necessity," because they are not manageable on a broader scale. (McTighe Decl. at 5.) And contrary to Defendant's assertion in his Motion, CAFCC does provide a contrary medical opinion concluding that contact lenses are not medically necessary for Defendant.

The Declaration of CAFCC Health Services Administrator Jaramillo, filed under seal, indicates that CAFCC contracts with an optometrist, Dr. Bray, who "provides comprehensive eye examinations and vision screenings on-site, and examines, diagnoses, treats and manages diseases and disorders of the eye" and is tasked with determining medical necessity respecting a detainee's request for contact lenses. (Doc. 159 (sealed), Jaramillo Decl. at 2.) [redacted]

The Court first finds CAFCC has a reasoned basis for its general policy prohibiting

contact lenses with limited exceptions, as set forth above. CAFCC 's limitation of contact lenses among the detainee population is based upon facility security and detainee safety issues which this Court finds legitimate in the circumstances. And while a blanket policy with no exceptions might well be problematic, this policy has exceptions for situations where contact lenses are determined to be medically necessary by CAFCC's own competent contracted medical staff. [redacted] The Court will not interfere with this reasoned approach containing appropriate exceptions after contemporaneous examination. The Court finds [redacted] considerably more reliable than the opinion offered in this circumstance by Defendant's ophthalmologist, Dr. Black. Whereas [redacted], Br. Black's recommendations in his April 6, 2021 and May 17, 2021 letters are based solely on conversations he had with Defendant and his mother. Dr. Black, through no fault of his own, could conduct no contemporaneous examination. He has not seen Defendant for an appointment since November 8, 2019. Thus, his statement that Defendant is "completely incapacitated and hindered with his current glasses" is based simply on what Defendant and Defendant's mother told him[2], and is not as reliable as Dr. Bray's conclusions after a contemporaneous examination.

In his Reply, Defendant argues his due process rights are violated by CAFCC's refusal to provide him the contact lenses because, among other things, Dr. Bray's conclusions are based on inaccurate information. [redacted]

---

[2] The complete sentence in Dr. Black's May 17, 2021 letter reads as follows: "Per discussion with Mr. John Caruso and his motion, John is completely incapacitated and hindered with his current glasses. He is experiencing severe headaches and inability ot function on a day-to-day basis." (Doc. 152 at 4.)

[Page content redacted]

The Court understands Defendant's preference for contact lenses. In a non-custodial or less secure setting, the accommodation would be straightforward. But the Court finds the safety and security concerns motivating CAFCC's contact lens limitation policy in the present circumstances are reasonably grounded, and as set forth above, that its determination that contact lenses are not medically necessary for Defendant is sound and will not be disturbed.

**IT IS ORDERED** denying Defendant's *Ex Parte* Motion to Compel CADC to Grant Access to Appropriate Prescription Medical Device—Contact Lenses (Doc. 150).

Dated this 2nd day of September, 2021.

Honorable John J. Tuchi
United States District Judge